**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A1270. THE STATE v. ALMANZA.

BRANCH, Judge.

This appeal arises out of Antonio Tapia Almanza's indictment in Cobb County for child molestation, incest, aggravated sexual battery, statutory rape, and aggravated child molestation. Following that indictment, Almanza's alleged victim (Almanza's stepdaughter) and her mother (Almanza's wife) left Cobb County, and the District Attorney's subsequent efforts to locate these witnesses have been unsuccessful. The State therefore filed a motion in limine seeking an order that would allow prosecutors to introduce into evidence the testimony of two of the child's treating physicians as to statements made to the doctors by the child's mother and in which the mother related both the child's allegations of abuse and the fact that the child had identified Almanza as her abuser. Following a hearing at which both physicians testified, the

trial court granted that motion in part and denied it in part. The State now appeals, asserting that the trial court erred when it found that those portions of the mother's statements that identified Almanza as the perpetrator of the alleged crimes did not fall within the hearsay exception found in OCGA § 24-8-803 (4). For reasons explained more fully below, we affirm the trial court's order.

We review a trial court's ruling as to the admissibility of hearsay evidence only for an abuse of discretion. See *Tanner v. State*, ___ Ga. ___ (804 SE2d 377) (2017); *Allen v. State*, 247 Ga. App. 10, 12 (1) (543 SE2d 45) (2000). Such an abuse of discretion "occurs where the trial court's ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." *Chua v. Johnson*, 336 Ga. App. 298, 299 (784 SE2d 449) (2016) (citation and punctuation omitted).

The relevant facts are undisputed and show that in or about May 2014, Almanza's stepdaughter reported to her mother that approximately one year earlier Almanza had molested her on two occasions. The mother reported these accusations to law enforcement, who arrested Almanza on May 28, 2014. Police also instructed the mother to take the child for a physical exam at Children's Healthcare of Atlanta ("CHOA"), which the mother did on May 29, 2014.

2

After granting the State several continuances, the trial court set trial for Monday, May 23, 2016. On Friday, May 20, the State filed both a motion for a continuance and the motion in limine that gave rise to this appeal. At the October 2016 hearing on its motion in limine, the State presented the testimony of Dr. Lynward Barrett, the pediatric emergency room physician who examined the child at CHOA in May 2014. Dr. Barrett testified that the mother reported that her daughter had told her that Almanza had molested her on two occasions by touching the child's vagina and by placing his penis "inside of her." The mother further related that, according to the child, these acts had taken place approximately one year earlier. Dr. Barrett performed a physical exam of the child, consulted with a social worker to make sure that law enforcement was involved and that the alleged abuser no longer had access to the child, and referred the child for psychological counseling. According to Dr. Barrett, he obtained all his information from the mother, he asked questions only to the mother, and he did not recall the child saying anything either before, during, or after the exam.[1]

---

[1] Dr. Barrett stated that when a child is brought in for an exam based on a report of physical or sexual abuse, his usual practice is to refrain from questioning the child directly and instead to ask questions of the "accompanying adult."

The victim's regular pediatrician, Charles Richards, also testified and stated that he had seen the child and her mother in his office on June 6, 2014, for treatment of the child's viral symptoms, including a fever, headaches, and muscle aches.[2] Dr. Richards further testified that as he was finishing his exam of the child, the mother became emotional and stated that the child had recently reported that approximately one year earlier Almanza had raped her on two different occasions.[3] Richards testified that all of the information he received regarding the allegations of sexual molestation came from the mother and that the child did not say anything during this visit.

Following the hearing, the trial court entered an order ruling that the doctors would be allowed to testify at trial as to any findings they made during the physical exam of the child and to the mother's statements regarding the fact that the child had reported being sexually abused. The court further ruled, however, that the physicians

---

[2] Dr. Richards explained that the mother had taken the child to the emergency room for treatment of the symptoms on the evening of June 5 and that the emergency room physician had treated the child and had advised the mother to take the child for a follow-up appointment with her regular pediatrician the next day.

[3] Approximately two weeks after this visit, Dr. Richards spoke with the mother by phone and the mother stated that the child "had kind of backed off her story a little bit," that she did not really understand the word "rape," and that she was not claiming that Almanza had "penetrated her."

could not testify as to "[a]ny identification of [Almanza] as the abuser." The State now appeals that ruling.

The State sought to introduce the out-of-court statements at issue under subsection 803 (4) of Georgia's current evidence code, which went into effect January 1, 2013. That evidentiary rule, which is substantially similar to Fed. Rule of Evid. 803

(4),[4] provides that hearsay statements are admissible "even though the declarant is

---

[4] When adopted in 2011, OCGA § 24-8-803 (4) was identical to the existing version of Fed. Rule of Evid. 803 (4). Specifically, in 2011, Fed. Rule of Evid. 803 (4) provided: "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." In 2011, however, Congress amended that rule, and the current version of Fed. Rule of Evid. 803 (4) provides that a hearsay statement is admissible if it "(A) is made for – and is reasonably pertinent to – medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." The advisory committee's note to the 2011 amendment states that the amendment occurred "as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility."

> We note that:
> Unlike ordinary legislative history . . . advisory committee notes are
> generated by a committee of judges, professors, and practitioners who
> are appointed by the Chief Justice of the United States and who engage
> in a lengthy process of drafting and revision, culminating in approval by
> the Supreme Court and submission to Congress. See Thomas E. Baker,
> *An Introduction to Federal Court Rulemaking Procedure*, 22 Tex. Tech.
> L. Rev. 323, 329-331 (1991); see also 28 USC § 2072 ("Rules of
> procedure and evidence; power to prescribe"). Although advisory
> committee notes cannot change the plain meaning of the federal rules of
> evidence, they are "assuredly persuasive scholarly commentaries –
> ordinarily *the* most persuasive – concerning the meaning of the [r]ules."
> [*Tome v. United States*, 513 U.S. 150, 167, 115 S. Ct. 696, 706, 130 L.

6

available as a witness" if they are

> made for purposes of medical diagnosis or treatment and describ[e] medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

OCGA § 24-8-803 (4). The language of OCGA § 24-8-803 (4) is virtually identical to the former OCGA § 24-3-4, which existed as part of Georgia's previous evidence code.[5] The trial court therefore relied on cases decided under the former code section in deciding the State's motion in limine.

---

> Ed. 2d 574 (1995)] (Scalia, J., concurring in part and concurring in the judgment) (emphasis original); see also *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132(II) (11th Cir.2005) (advisory committee notes "are nearly universally accorded great weight in interpreting federal rules") (citation and punctuation omitted).

*Walters v. State*, 335 Ga. App. 12, 15, n. 3 (780 SE2d 720) (2015).

> [5] Former OCGA § 24-3-4 provided:
> Statements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence.

7

Citing our Supreme Court's decision in *Davis v. State*, 299 Ga. 180 (787 SE2d 221) (2016), the State argues that the trial court erred in relying on pre-2013 precedent to deny in part its motion in limine. *Davis* involved the application of the sequestration rule found in OCGA § 24-6-615, which differed in several significant respects from the sequestration provision in the pre-2013 evidence code (former OCGA § 24-9-61.) After addressing the merits of the appeal, the Supreme Court expressed its frustration at the parties' failure to acknowledge the difference between the two sequestration provisions and to cite relevant law in their briefs, stating:

> [T]his case was tried under our State's new Evidence Code, and *the key evidence rules we must apply* — OCGA §§ 24-6-615 and 24-4-403 — *differ from the pertinent provisions of the old Evidence Code and instead track the analogous federal evidence rules*, meaning that we will look to those federal rules and the federal case law interpreting them for guidance. Nevertheless, in their briefs to this Court, Appellant cited OCGA § 24-6-615 only in passing and failed to cite OCGA § 24-4-403; the State cited neither new rule; and neither party cited any case law interpreting these provisions of the new Evidence Code or the parallel provisions of the Federal Rules of Evidence. It may be that the result of this case would be the same if we applied the old Evidence Code and our decisions interpreting it, but if so, that is happenstance, *at least without careful comparison of the old and new law*. Georgia lawyers do this Court no favors — and risk obtaining reversible evidence rulings from trial courts — when they fail to recognize that we are all living in

8

a new evidence world and are required to analyze and apply the new law. It may be hard to comprehend that, when it comes to trials and hearings held after January 1, 2013, the most pertinent precedent to cite on an evidentiary issue *may* be a decades-old decision of the Eleventh Circuit (or even the old Fifth Circuit), instead of a week-old unanimous decision of this Court (if we were deciding the appeal of a case tried before 2013 and governed by the old rules, as still frequently occurs).

*Davis*, 299 Ga. at 192 (3) (footnotes omitted; emphasis supplied).

Relying on this language, the State argues that the trial court erred as a matter of law when it relied on cases decided under former OCGA § 24-3-4; that *Davis* mandates that in the absence of a Georgia appellate case addressing the post-2013 evidentiary rule at issue, trial courts are required to look at federal precedent when interpreting and applying such a rule; and that under relevant federal precedent, the mother's statement that the child had identified Almanza as her abuser was admissible. We find these arguments to be without merit.

The State's argument is based on a misinterpretation of *Davis*. That case did not invalidate the precedential value of all cases decided under Georgia's former evidence code. Instead, *Davis* addressed those situations where the new evidence code represents a substantive change from the prior code. In such cases, "to the extent that the new [evidentiary] rule[ ] [at issue] . . . borrow[s] from the text of the federal

evidence rules," courts should "look for guidance to the decisions of the federal appellate courts, particularly the United States Supreme Court and the Eleventh Circuit, interpreting the federal rule[ ] in question." *Davis*, 299 Ga. at 185 (2) (a) (citation omitted). In cases where there has been no substantive change to the evidentiary rule in question, however, courts "may rely on Georgia decisions under the old [Evidence] Code." *State v. Frost*, 297 Ga. 296, 299 (773 SE2d 700) (2015). See also *Bradshaw v. State*, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015) (noting "the General Assembly's statement that [in enacting the new Evidence Code] it did not intend to change the substantive law of Georgia as existing on December 31, 2012, unless that law was displaced by a provision of the new Evidence Code").

As noted previously, the hearsay exception at issue in this case does not differ substantively from its predecessor. See Milich, *Georgia Rules of Evidence*, §19.6 (2014) (observing that OCGA § 24-8-803 (4) "is simply a re-numbered version of pre-2013 OCGA § 24-3-4"). In deciding the admissibility of the mother's statement, therefore, the trial court properly relied on cases decided under the former evidence code. Those cases hold that statements made for the purpose of obtaining medical treatment are admissible to the extent that the speaker is relating the cause of the injury or condition requiring treatment. See *Greene v. State*, 295 Ga. App. 803, 812

10

(8) (d) (673 SE2d 292) (2009); *Thomas v. State*, 288 Ga. App. 602, 609-610 (4) (654 SE2d 682) (2007); *Payne v. State*, 273 Ga. App. 483, 486 (4) (615 SE2d 564) (2005). A medical professional may therefore testify, for example, that the victim reported being raped or assaulted. See *Greene*, 295 Ga. App. at 812 (8) (d); *Thomas*, 288 Ga. App. at 609 (4); *Opio v. State*, 283 Ga. App. 894, 899 (1) (d) (ii) (642 SE2d 906) (2007); *Miller v. State*, 194 Ga. App. 533, 534 (2) (a) (390 SE2d 901) (1990). Additionally, medical personnel may testify as to statements made to them describing the type of weapon used against the victim or the description of the acts that resulted in the victim's injuries. See *Bryant v. State*, 304 Ga. App. 456, 462 (4) (696 SE2d 439) (2010) (nurse could testify that victim reported "her assailant had 'pushed her into the furniture'" as the victim was explaining "both the nature and origin of some of her injuries"); *Greene*, 295 Ga. App. at 812 (8) (d) (physician who treated victim for bruising around her neck could testify that victim reported being strangled); *Payne*, 273 Ga. App. at 486 (4) (physician who treated victim for chemical burns could testify "that he received a report that" a mixture of liquids, including bleach, "had been thrown into [the victim's] face"). Similarly, treating practitioners may also testify as to alleged acts of molestation or physical abuse reported by a child. See *Allen v. State*, 247 Ga. App. 10, 12 (1) (543 SE2d 45) (2000) (counselor could testify

11

as to child's statements describing specific acts of physical abuse); *Roberson v. State*, 187 Ga. App. 485, 486 (370 SE2d 661) (1988) (nurse could testify as to child's statement concerning the specific acts of molestation committed against him) (physical precedent only); *Sparks v. State*, 172 Ga. App. 891, 892 (2) (324 SE2d 824) (1984) (same).

The rationale for allowing such testimony under the hearsay exception for medical treatment or diagnosis is that a declarant should be aware that a practitioner's understanding of what happened to the patient is reasonably pertinent to the patient's diagnosis and treatment. See *Thomas*, 288 Ga. App. at 609-610 (4); *Payne*, 273 Ga. App. at 486 (4). Relying on the same rationale, however, Georgia's appellate courts have consistently held that statements identifying the person allegedly responsible for the victim's injuries are not admissible as statements made for the purpose of medical diagnosis and treatment. Specifically, we have held that a victim's statements to medical personnel regarding the identity of an assailant or the "circumstances and activity" occurring prior to the injury do not "fall within the statutory exception" because they are "not reasonably pertinent to [the victim's] diagnosis or treatment." *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) (1991) (shooting victim's statement to physician in which she described the circumstances leading to the

shooting and identified defendant as the shooter did not fall within "the statutory hearsay exception of [former] OCGA § 24-3-4"). See also *Brown v. State*, 273 Ga. App. 88, 89 (614 SE2d 187) (2005) (assault victim's statement to nurse that he had been attacked by his roommate not admissible under former OCGA § 24-3-4); *Miller*, 194 Ga. App. at 534 (2) (a) (rape victim's statement to ER physician identifying defendant as her assailant constituted inadmissible hearsay as it "was unnecessary to any legitimate purpose addressed in [former] OCGA § 24-3-4").

Moreover, we have consistently applied this limitation on the admissibility of hearsay statements under the medical treatment or diagnosis exception even in cases involving the physical or sexual abuse of a child. Thus, we have held that a child victim's identification of her abuser was not reasonably pertinent to the child's diagnosis and treatment. See *Cupe v. State*, 253 Ga. App. 851, 857 (4) (560 SE2d 700) (2002) (trial court erred by allowing a treating physician to testify as to the father's statement in which the father identified the defendant as the person who had "inflicted the child's bruises," as the identification of the defendant was not "reasonably pertinent to [the child's] diagnosis or treatment"); *Dean v. State*, 198 Ga. App. 133, 134 (1) (a) (401 SE2d 40) (1990) (victim's statement to examining physician identifying his father as his molester was not admissible under former

13

OCGA § 24-3-4); *Roberson*, 187 Ga. App. at 486 (trial court erred in admitting testimony concerning child molestation victim's "identification of his father to the nurse practitioner as the perpetrator"); *Johnson v. State*, 149 Ga. App. 544, 545 (5) (254 SE2d 757) (1979) (trial court erred in allowing physician to testify as to alleged incest victim's statement that she had intercourse with her father). See also *State v. Butler*, 256 Ga. 448, 449, n. 1 (349 SE2d 684) (1986) (noting in dicta that while a child molestation victim's statements to physicians about "what happened" to her were admissible, "her statements about who did it were [not] admissible, as this information would not be pertinent to the medical diagnosis"); *Allen*, 247 Ga. App. at 12 (1) (affirming trial court's admission of counselor's testimony regarding child's statements as to the acts of abuse committed against her, and noting that the trial court did not allow the counselor to testify as to the child's identification of the defendant as her abuser).

Furthermore, to the extent that we might be required to look to federal law to interpret OCGA § 24-8-803 (4), the Georgia Supreme Court has decreed that we should look first to cases from the United States Supreme Court and the Eleventh Circuit. See *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016). Neither party has directed us to any relevant precedent from the United States Supreme Court, and

14

we are aware of none.[6] And our decisions holding that the predecessor to OCGA §

24-8-803 (4) did not apply to statements identifying the defendant as the cause of the

victim's injuries are consistent with the decisions of the Eleventh Circuit applying

Fed. R. Evid. 803 (4).

---

[6] The State contends that its position in this case is supported by the United States Supreme Court's decision in *White v. Illinois*, 502 U. S. 346 (112 SCt 736, 116 LEd2d 848) (1992). Specifically, the State argues that *White* held that "an unavailable child's identification of her sexual abuser is properly admissible under Rule 803 (4)." We disagree. In *White*, the trial court allowed the child's mother and babysitter, the responding officer, and emergency room personnel to testify as to the child's "statements describing the assault," and it appears that this testimony included the child's statements identifying the defendant as the perpetrator. 502 U. S. at 349-350. On appeal, the defendant contended that because the trial court had made no specific finding that the child was unavailable to testify, this testimony violated his rights under the Confrontation Clause. Id. The Supreme Court rejected this argument, holding that the Confrontation Clause does not require a trial court to make a specific finding regarding a declarant's availability before allowing hearsay testimony that is otherwise admissible under one of the "firmly rooted exceptions to the hearsay rule." Id. at 355-356. The Court noted that the child's statements to the mother, babysitter, and responding officer were made within 45 minutes of the assault and were therefore admissible under the "excited utterance" exception to the hearsay rule. Id. at 351. Additionally, the child's statements to the emergency room physician and nurse, which were made within hours of the incident, were admissible under both the excited utterance exception and the exception for statements made for purposes of medical diagnosis and treatment. Id. Notably, the excited utterance exception allows the introduction of hearsay statements in which the declarant identifies the perpetrator. See, e.g., *United States v. Davis*, 330 Fed. Appx. 183, 185 (11th Cir. 2009); *Robbins v. State*, 300 Ga. 387, 389 (2) (793 SE2d 62) (2016); *Wilson v. State*, 295 Ga. 84, 87 (757 SE2d 825) (2014). Thus, *White* did not address whether such identification statements were admissible under Rule 803 (4).

Relying on the advisory committee's note to Fed. R. Evid. 803 (4),[7] the Eleventh Circuit has held that the rule allows statements related to the cause of the victim's injuries, but not statements that "assign any fault" for the injuries. *United States v. Belfast*, 611 F.3d 783, 818-819 (VI) (B) (11th Cir. 2010). See also *United States v. Williams*, 578 Fed. Appx. 872, 876-877 (III) (11th Cir. 2014). Thus, the Eleventh Circuit has found admissible under Fed. R. Evid. 803 (4) a victim's statements that his injuries resulted from "abuse and torture," *Belfast*, 611 F.3d at 818-819 (VI) (B); a victim's statements that his injuries occurred when he "was beaten," *United States v. Darden*, 186 Fed. Appx. 887, 889 (11th Cir. 2006); and a victim's statement that she was raped. *Williams*, 578 Fed. Appx. at 876-877 (III). That Court has further held, however, that statements identifying the party responsible for the victim's injuries would be inadmissible under Fed. R. Evid. 803 (4). See *Darden*, 186 Fed. Appx. at 890 (noting that the part of the victim's statement in which he identified "the cops" as his assailants would not be admissible, as it went "to the fault

---

[7] The advisory committee's note provides, in relevant part, that Fed. R. Evid. 803 (4) allows "statements as to causation, reasonably pertinent to" purposes of diagnoses and treatment, but that it does not permit "[s]tatements as to fault . . . . Thus[,] a patient's statement that he was struck by an automobile would qualify [for admission under Fed. R. Evid. 803 (4)] but not his statement that the car was driven through a red light."

16

[for] his injuries"). See also *Belfast*, 611 F.3d at 819 (VI) (B) (finding the victims' statements that their wounds and burns resulted from abuse or torture were admissible given that they did "not assign any fault for the abuse or torture").

Despite the fact that the case law from both Georgia's appellate courts and the Eleventh Circuit supports the trial court's ruling in this case, the State argues that because there is no Eleventh Circuit case addressing the application of Fed. R. Evid. 803 (4) in the context of child molestation, we should adopt the approach employed by the Eighth, Ninth, and Tenth Circuits[8] to find that the statements at issue fall within the hearsay exception set forth in OCGA § 24-8-803 (4). We decline to do so.[9]

---

[8] The State also cites two civil cases from the First and Fourth Circuits where the court found a child's out-of-court statements, made to a mental health professional and in which the child identified her abuser, admissible under Fed. R. of Evid. 803 (4). See *Danaipour v. McLarey*, 386 F3d 289, 298-299 (1st Cir. 2004); *Morgan v. Foretich*, 846 F2d 941, 949-950 (V) (4th Cir 1988). Given that civil cases do not present the same Confrontation Clause concerns as criminal cases however, we do not consider these cases instructive as to the question before us, which is whether hearsay statements in which a child identifies the defendant as her abuser are admissible under Rule 803 (4). See *Idaho v. Wright*, 497 U. S. 805, 814 (110 SCt 3139, 111 LEd2d 638) (1990) (noting that because of reliability concerns, "[t]he Confrontation Clause . . . bars the admission of some evidence [in criminal cases] that would otherwise be admissible under an exception to the hearsay rule"); *Danaipour*, 386 F3d at 298 (noting that given the civil nature of the case, Confrontation Clause concerns were not present).

[9] Even assuming that, as the State insists, we are required to apply only federal precedent, the State offers no argument or authority to support its contention that we are obligated to follow the limited line of cases on which it relies — a line of cases that is not without critics.

17

In *United States v. Renville*, 779 F2d 430 (8th Cir. 1985), the Eighth Circuit concluded that "[s]tatements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household are reasonably pertinent to treatment." Id. at 436 (II). The court explained the rationale underlying this conclusion as follows:

> First, child abuse involves more than physical injury; the physician must be attentive to treating the emotional and psychological injuries which accompany this crime . . . The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser. . . . Furthermore, in [most cases not involving child abuse] the statement of fault is not relevant to prevention of recurrence of the injury. Sexual abuse of children at home presents a wholly different situation. . . . Second, physicians have an obligation, imposed by state law, to prevent an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse. This obligation is most immediate where the abuser is a member of the victim's household . . . . Information that the abuser is a member of the household is therefore "reasonably pertinent" to a course of treatment which includes removing the child from the home.

Id. at 437-438 (II) (citations and footnotes omitted). *Renville* then concluded that statements of identity in child abuse cases would be admissible under Fed. R. Evid. 803 (4) provided "the physician makes clear to the victim that the inquiry into the

18

identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding." Id. at 438 (II).

Relying to a large extent on *Renville*'s logic, the Ninth Circuit held that statements of identity are reasonably pertinent to the treatment of victims in all sexual assault cases, explaining: "Sexual abuse involves more than physical injury; the physician must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser." *United States v. George*, 960 F2d 97, 99 (II) (A) (9th Cir. 1992) (citation omitted). And in *United States v. Joe*, 8 F3d 1488 (10th Cir. 1993), the Tenth Circuit also relied on *Renville* to find that statements made by victims of domestic sexual assault to their treating physicians and in which the victims identify their abusers are admissible under Fed. R. Evid. 803 (4), reasoning:

> the identity of the abuser is reasonably pertinent to treatment in virtually every domestic sexual assault case, even those not involving children. All victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser. The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household.

19

8 F3d at 1494-1495 (II) (B) (1) (a).

Notably, in arguing for the expansion of the medical treatment and diagnosis exception to allow statements identifying the perpetrator in cases of child abuse, the State fails to address the fact that, unlike the Federal Rules of Evidence, Georgia's Evidence Code has a provision other than Rule 803 (4) that allows the admission of identification statements such as the one at issue. Georgia's Child Hearsay Statute provides:

> A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies of the trial, unless the adverse party forfeits or waives such child's testimony . . . and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

OCGA § 24-8-820.

Since its enactment, the Child Hearsay Statute has been applied to allow the introduction of out-of-court statements in which the victim identified his or her

assailant to third parties, including medical professionals. See *Romani v. State*, 303 Ga. App. 829, 829-830 (1) (695 SE2d 303) (2010) (finding admissible under the Child Hearsay Statute statements made by four-year-old victim to the examining nurse practitioner that identified her father as her abuser); *Bell v. State*, 294 Ga. App. 779, 781 (4) (670 S.E.2d 476) (2008) (statement victim made to nurse during a medical examination and in which she identified defendant as her rapist were admissible under the Child Hearsay Statute); *Flowers v. State*, 255 Ga. App. 660, 662 (3) (566 S.E.2d 339) (2002) (under the Child Hearsay Statute, nurse practitioner who examined the victim could testify as to the victim's statements in which victim identified defendant as her assailant). See also *Guzman v. State*, 273 Ga. App. 819, 821 (2) (616 SE2d 142) (2005) (Child Hearsay Statute allowed therapist's testimony as to child's statements identifying defendant as the person who molested her).

The Child Hearsay Statute is Georgia's response to the fact that out-of-court statements of children are frequently relevant in child abuse cases although many such statements do not fall within any of the traditional hearsay exceptions. Moreover, this particular hearsay exception was carefully drawn so as to protect and accused's rights under the Confrontation Clause. See *Hatley v. State*, 290 Ga. 480, 482-484 (II) (722 SE2d 67) (2012) (addressing the constitutionality of former OCGA

21

§ 24-3-16). Accordingly, the admission of a child's out-of-court statements in which he or she identifies her abuser is controlled by OCGA §24-8-820, even when those statements are made to a medical professional treating or otherwise diagnosing the victim.[10] See *State v. Jones*, 625 S2d 821, 826 (Fla. 1993) (finding that a child victim's statements to medical personnel identifying the child's abuser were not admissible under the medical diagnosis and treatment exception but could be admitted under Florida's child hearsay statute, F. S. A. §90.803 (23)).

To the extent that the State is arguing that we should employ the reasoning of *Renville* and its progeny to find that a child abuse victim's out-of-court identification of her abuser to medical personnel is admissible under both the Child Hearsay Statute and the medical treatment or diagnosis exception, we disagree. The analysis employed in *Renville*, *George*, and *Joe* fails to focus on the motives and/or state of mind of the declarant and in so doing, it essentially disregards the common-law

---

[10] The State would have us treat the Child Hearsay Statute as irrelevant to this appeal, asserting that OCGA § 24-8-20 applies only in cases where the declarant is available. This assertion fails to consider the possibility that under Georgia law, identification statements made under circumstances such as those present here are admissible *only if* the declarant is available.

22

rationale underlying all established hearsay exceptions.[11] In short, the analysis in those cases fails to consider whether out-of-court statements relating to the identity of an assailant carry the same inherent guarantee of trustworthiness as other statements made for the purpose of receiving medical diagnosis or treatment.

Hearsay is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c); Fed. R. Evid. 801. Because hearsay statements are offered for the truth of the matter asserted, their evidentiary value depends upon the reliability of the declarant at the time the statement was made. See *Boivin v. State*, 298 Ga. App. 411, 414 (2) (680 SE2d 415) (2009) ("[e]vidence is hearsay when the proponent's use of the evidence essentially asks the jury to assume that the out-of-court declarant was not lying or mistaken when the statement was made") (punctuation and footnote omitted) (applying former OCGA § 24-3-1 (a)). Thus, hearsay exceptions are premised on the idea that the circumstances surrounding the out-of-court statement make "the declarant's truthfulness . . . so clear . . . that the test

---

[11] "It is well established that the body of common law knowledge must be a source of guidance in our interpretation of the Rules [of Evidence]." *Tome*, 513 U.S. at 168 (Scalia, J., concurring in part and concurring in the judgment) (citations and punctuation omitted).

of cross-examination would be of marginal utility." *Idaho v. Wright*, 497 U. S. 805, 820 (II) (110 SCt 3139, 111 LEd2d 638) (1990), citing 5 J. Wigmore, Evidence §1420, p. 251 (J. Chadbourn rev. 1974).

Out-of-court statements for purposes of medical treatment or diagnosis are presumed reliable (and are therefore excepted from the Hearsay Rule) because a patient seeking medical treatment has a "strong motivation to be truthful," Fed. R. Evid. 803 (4), advisory committee's note. This hearsay exception therefore presumes a certain state of mind by the declarant, specifically that the patient (or his representative) is aware that when providing information for purposes of medical diagnosis or treatment, it is in the patient's self-interest to tell the truth. In other words, the exception is based on the premise that statements "made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carr[y] special guarantees of credibility." *White v. Illinois*, 502 U. S. 346, 356 (112 SCt 736, 116 LE2d 848) (1992). Thus, as *White* makes clear, hearsay statements under Rule 803 (4) carry a sufficient guarantee of trustworthiness under traditional hearsay analysis.

Given that the trustworthiness of statements made for purposes of medical treatment and diagnosis depends on the declarant's motive, courts have traditionally

24

looked to the state of mind of the declarant to determine whether a statement was reasonably pertinent to medical diagnosis or treatment, – i.e., "the court [would] determine whether the statements were reasonably considered *by the declarant* as being pertinent to the diagnosis or treatment sought." *Rock v. Huffco Gas & Oil Co.*, 922 F2d 272, 277 (II) (A) (1) (5th Cir. 1991) (emphasis supplied). See also *White*, 502 U. S. at 356.

In concluding that identification statements made by victims of child abuse or sexual assault were admissible under Fed. R. Evid. 803 (4), however, *Renville*, *George*, and *Joe* focused on the perspective of the treating physician rather than on the state of mind of the declarant. These cases examined whether the physician viewed the information relayed by the patient as pertinent to diagnosis and treatment, not whether the declarant believed that information was necessary to his or her proper treatment. See *Renville*, 779 F2d at 438 (II) ("[w]e therefore believe that statements of identity to a physician by a child sexually abused by a family member are of a type physicians reasonably rely on in composing a diagnosis and course of treatment"); *George*, 960 F2d at 99 (II) (A) (finding that the child's statement identifying her abuser was made for the purpose of medical diagnosis or treatment and was reasonably pertinent to the same based on the treating physician's testimony "that she

25

asked about the assailant's identity for the purpose of diagnosing and treating the victim"); *Joe*, 8 F3d at 1495 (II) (B) (finding patient's identification of her husband admissible under Fed. R. Evid. 803 (4) based on the treating physician's testimony "that the identity of the sexual assailant was important for his recommendation regarding [the patient's] after-care, including appropriate counseling"). As one court has observed, the "bizarre consequence" of this analysis is that "the state of mind of the hearsay declarant is effectively ignored." *Cassidy v. State*, 536 A2d 666, 687 (Md. App. 1988) (declining to extend Maryland's version of the medical treatment hearsay exception to cover identification statements made by a child molestation victim).

Moreover, these cases fail to acknowledge that a medical professional's belief that certain information is reasonably pertinent to treatment and diagnosis is not necessarily related to the motives of the declarant in identifying the party responsible for his or her injuries. Accordingly, analyzing whether a medical professional considers certain information relevant to a patient's treatment offers no guarantee as to the inherent trustworthiness of the identification information being provided by the declarant. In other words, in the absence of some showing that a statement arose from the declarant's desire for effective medical treatment, there is no inherent trustworthiness in a hearsay statement identifying the perpetrator. See *Colvard v.*

*Commonwealth*, 309 SW2d 239, 245-246 (I) (D) (Ky. 2010) (rejecting the rationale of *Renville* and holding that Kentucky Rule of Evidence 803 (4) did not permit the introduction of identification statements in child molestation cases) (overruling the court's previous decision in *Edwards v. Commonwealth*, 833 SW2d 842 (Ky. 1992)). And we find that this reasoning applies even though the out-of-court statement may impose on medical personnel certain legal reporting requirements, may impact a child's living situation, or may result in the child's being referred for psychological counseling. As the Maryland Court of Appeals explained when declining to follow the *Renville* rationale,

> The state of mind of a declarant vis-à-vis anticipated physical treatment is quite different from the state of mind of a declarant vis-à-vis anticipated social disposition. The situations may be the same to the doctor; they are not the same to the patient. Physical self-survival dictates revealing even embarrassing truth to avoid the risk of the wrong medicine or the needless operation. Presupposing a declarant conscious of the probable consequences of his assertions, the imperative to speak truthfully is not nearly so strong when the anticipated result is a social disposition. The temptation to influence the result may, indeed, run in quite the opposite direction.

*Cassidy*, 536 A2d at 684.

Moreover, the trustworthiness of identification statements is even more questionable where, as in this case, the child is not the declarant and the information that a family member is abusing the child is provided by another adult in the same household. Put another way, in cases involving family disputes, a parent or guardian's motive for casting blame for a child's abuse may or may not be in the child's best interest or for the purpose of medical diagnosis.

Given that out-of-court statements identifying the party responsible for a victim's injuries do not carry with them the same guarantee of trustworthiness as other statements made for purposes of medical diagnosis and treatment, we conclude that such statements do not fall within the hearsay exception at issue. Accordingly, we find that the trial court did not abuse its discretion in concluding that the those portions of the mother's statements in which she claimed that her child had identified Almanza as the child's abuser are not admissible under OCGA § 24-8-803 (4).

*Judgment affirmed. McFadden, P. J., and Bethel, J., concur.*