304 Ga. 553
FINAL COPY

S18G0585. THE STATE v. ALMANZA.

PETERSON, Justice.

We granted certiorari to decide whether hearsay identifying the alleged sexual abuser of a child victim is admissible under the hearsay exception for statements made for purposes of medical diagnosis or treatment found in OCGA § 24-8-803 (4) ("Rule 803 (4)"). Under the new Evidence Code, we know that Georgia evidence rules that track the federal rules are to be interpreted according to federal case law, while rules that were instead carried over from the old Evidence Code are to be interpreted according to our case law interpreting the old Code. But Georgia Rule 803 (4) is materially identical to *both* an existing federal rule *and* a provision of the old Georgia Evidence Code. Federal case law construing Federal Rule of Evidence 803 (4) has held that the identity of an alleged child sexual abuser may, in certain circumstances, be admissible. Georgia case law construing the old state rule held that such evidence was not admissible. Because the fundamental rule of the new Evidence Code is that

federal appellate case law applies when a Georgia rule is materially identical to a federal rule and has not yet been interpreted by a Georgia appellate court, we conclude that the new Evidence Code displaced our old Georgia precedent and so federal case law applies here. Accordingly, Rule 803 (4) permits the admission of identity in child sexual abuse cases when reasonably pertinent to medical diagnosis or treatment. We reverse the Court of Appeals's decision to the contrary and remand with instructions to vacate the trial court's order and remand for further proceedings consistent with this opinion.

1. The relevant facts as recounted by the Court of Appeals show that in May 2014, Almanza's stepdaughter told her mother that Almanza had twice molested her approximately one year earlier.[1] The mother reported these accusations to the police, who arrested Almanza on May 28, 2014. The police instructed the mother to take the child for a physical exam at Children's Healthcare of Atlanta, which the mother did on May 29, 2014.

At the pediatric emergency room, Dr. Lynward Barrett examined the child. Dr. Barrett testified that the mother reported that her daughter had told her that

---

[1] While not mentioned by the Court of Appeals, the child was thirteen years old at the time of the alleged incident.

Almanza had molested her on two occasions by touching the child's vagina and by placing his penis "inside of her." The mother also told Dr. Barrett that the child said these acts had taken place approximately one year earlier. Dr. Barrett performed a physical examination of the child, consulted with a social worker to ensure law enforcement was involved and that the abuser no longer had access to the child, and referred the child for psychological counseling. Dr. Barrett testified that he obtained all of his information from the mother, only questioned the mother, and did not recall the child saying anything before, during, or after the exam.

Dr. Charles Richards, the child's regular pediatrician, testified that he saw the child and her mother at his office on June 6, 2014, for treatment of the child's viral symptoms. Dr. Richards testified that, as he was finishing the exam of the child, the mother became emotional and said the child had recently reported that approximately one year earlier Almanza had raped her on two different occasions. Dr. Richards similarly testified that he received all of the information regarding the allegations of sexual molestation from the mother and that the child did not say anything during this visit.

After indicting Almanza on charges of child molestation, incest,

3

aggravated sexual battery, statutory rape, and aggravated child molestation, the State became unable to locate either the mother or the child. The State thereafter filed a motion in limine to obtain a ruling on the admissibility of the mother's statements to both doctors. Following a hearing on the motion, the trial court ruled that the doctors would be allowed to testify at trial to any findings they made during the physical examination of the child and to the mother's statements regarding the fact the child had reported being sexually abused. But the trial court also ruled that neither physician could testify as to "[a]ny identification of [Almanza] as the abuser." The State appealed that ruling, and the Court of Appeals affirmed. State v. Almanza, 344 Ga. App. 38, 52 (807 SE2d 517) (2017).

The Court of Appeals held that the trial court did not abuse its discretion in refusing to admit the mother's statements of identification because such statements of identity are categorically inadmissible under Rule 803 (4). Almanza, 344 Ga. App. at 52. In doing so, the Court of Appeals concluded that Georgia case law interpreting the old Evidence Code's medical diagnosis and treatment hearsay exception remained valid under the new Evidence Code. Id. at 41-45. The Court of Appeals went on to rely alternatively on Eleventh Circuit

4

decisions regarding Federal Rule 803 (4), distinguishing statements of causation (which are admissible) from attribution of fault (which are not). Id. at 45-46. The Court of Appeals also criticized the reasoning or questioned the relevance of precedent addressing the admission of identity in child sexual abuse cases in the First, Fourth, Eighth, Ninth, and Tenth Circuits and specifically rejected the admissibility test set forth in United States v. Renville, 779 F2d 430 (8th Cir. 1985). Almanza, 344 Ga. App. at 46-52.

The Georgia precedent upon which the Court of Appeals relied did not survive the adoption of the new Evidence Code. The Eleventh Circuit decisions that the Court of Appeals alternatively relied upon did not decide the question before us regarding the application of Rule 803 (4) in the context of child sexual abuse; the federal precedent the Court of Appeals rejected did decide that question. We apply that federal precedent and conclude that the Court of Appeals's categorical bar on the admissibility of identification under Rule 803 (4) in child sexual abuse cases was error.

2. Georgia's new Evidence Code largely mirrors the Federal Rules of Evidence. This is by design. The preamble to the act adopting the new Evidence Code is explicit:

5

It is the intent of the General Assembly in enacting this Act to adopt the Federal Rules of Evidence, as interpreted by the Supreme Court of the United States and the United States circuit courts of appeal[s] as of January 1, 2013, to the extent that such interpretation is consistent with the Constitution of Georgia. Where conflicts were found to exist among the decisions of the various circuit courts of appeal[s] interpreting the federal rules of evidence, the General Assembly considered the decisions of the 11th Circuit Court of Appeals. It is the intent of the General Assembly to revise, modernize, and reenact the general laws of this state relating to evidence while adopting, in large measure, the Federal Rules of Evidence. The General Assembly is cognizant that there are many issues regarding evidence that are not covered by the Federal Rules of Evidence and in those situations the former provisions of Title 24 have been retained. Unless displaced by the particular provisions of this Act, the General Assembly intends that the substantive law of evidence in Georgia as it existed on December 31, 2012, be retained.

Ga. L. 2011, pp. 99, 100 § 1. This preamble, though not codified, is a clear instruction manual for courts trying to decipher what the new Evidence Code purports to do and what precedent to apply. Like any instructions, it is best to read them, and they must be read in order. First, the General Assembly stated that the primary aim of the new Code was to "adopt the Federal Rules of Evidence" as "interpreted by" federal appellate courts "as of January 1, 2013[.]"[2] Second, if a conflict exists among the federal appellate courts, we look

---

[2] Although the General Assembly purported to point us to decisions of the federal appellate courts until January 1, 2013, its vote to do so occurred during its 2011 Session. It

to the "decisions of the 11th Circuit." Third, courts are to look to the "substantive law of evidence in Georgia as it existed on December 31, 2012," only when not displaced by the new code. Id. See also Glenn v. State, 302 Ga. 276, 280 (II) n. 4 (806 SE2d 564) (2017) ("[T]o the extent that the General Assembly adopted the federal rules, it did so with an understanding of how those rules are applied in federal courts," not by prior Georgia courts. (citation and punctuation omitted)).

Thus, the rule is simple: if a rule in the new Evidence Code is materially identical to a Federal Rule of Evidence, we look to federal case law. Glenn, 302 Ga. at 280 (II) n. 4 ("By using language nearly identical to Federal Rule of Evidence 701 (a), . . . the enactment of OCGA § 24-7-701 (a) was a statutory modification to the admissibility of such evidence and *displaced prior precedent on the matter*." (emphasis added)); Davis v. State, 299 Ga. 180, 189 (2) (b) (787 SE2d 221) (2016) ("OCGA § 24-4-403 mirrors Federal Rule of Evidence 403

---

is far from clear that the General Assembly could essentially incorporate by reference into the Code judicial decisions that had not yet occurred; such an act might well run afoul of the non-delegation doctrine. See Ga. Const. of 1983, Art. III, Sec. I, Par. I ("The legislative power of the state shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives."). But whether the key date for these purposes is 2013 or 2011 need not be decided today, as none of the federal appellate decisions on which we rely was decided between those dates.

and is interpreted accordingly."); <u>Olds v. State</u>, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) ("[W]hen we have considered the meaning of [OCGA § 24-4-404 (b)], we consistently have looked for guidance in the decisions of the federal appellate courts construing and applying Federal Rule of Evidence 404 (b).").

If there is no materially identical Federal Rule of Evidence and a provision of the old Evidence Code was retained in the new Code, our case law interpreting that former provision applies. <u>Watson v. State</u>, 303 Ga. 758, 760 (2) (b) n. 3 (814 SE2d 396) (2018) (explaining that because OCGA § 24-7-707 "does not have any equivalent provision in the federal rules, . . . it is appropriate to rely on decisions under the old Code" ); <u>Chrysler Group, LLC v. Walden</u>, 303 Ga. 358, 362-363 (II) (812 SE2d 244) (2018) (looking to "Georgia cases decided under the former version of [the] rule . . . for guidance" only after explicitly noting the rule had "no federal counterpart"); <u>Bradshaw v. State</u>, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015) ("*In the absence of a provision in the Federal Rules of Evidence governing accomplice testimony* . . . [and] in light of the nearly identical language of accomplice provisions in the old and new Evidence Code, we give the new accomplice provision the same meaning as the old one." (emphasis added)).

This case presents an unusual situation: Rule 803 (4) is materially identical both to Federal Rule 803 (4) and to the medical treatment and diagnosis hearsay exception under the old Evidence Code (former OCGA § 24-3-4). Rule 803 (4) reads:

> The following shall not be excluded by the hearsay rule, even though the declarant is available as a witness:
> . . .
> **Statements for purposes of medical diagnosis or treatment**. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment[.]

OCGA § 24-8-803 (4); see also former OCGA § 24-3-4 (same). Federal Rule 803 (4) was the same:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> . . .
> **Statements for purposes of medical diagnosis or treatment**. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Fed. R. Evid. 803 (4) (2011).[3] These provisions are identical; the only difference is the Georgia provision says covered statements "shall not be excluded," while the federal provision says they "are not excluded."

Although this is the first time we have considered a provision of the new Evidence Code that is materially identical to both the old Code and the federal rules, the principles outlined above still apply. The General Assembly was crystal clear in conveying its intent that Georgia's new Evidence Code was primarily enacted to adopt the Federal Rules of Evidence. And to the extent the General Assembly adopted the Federal Rules of Evidence, it did so "as interpreted" by the federal appellate courts as of the effective date of the new Code. Ga. L. 2011, p. 100 § 1. As such, they not only plainly adopted the language of the Federal Rules of Evidence, but they also did so in the light of federal precedent addressing each issue of evidence covered by those same

---

[3] When Rule 803 (4) was adopted in May 2011, it was identical to the then-existing version of Federal Rule 803 (4). In December 2011, the federal rule was amended as part of a "restyling of the Evidence Rules[.]" Fed. R. Evid. 803, Advisory Committee Note. These changes were "stylistic only." Id. They were not meant to "change any result in any ruling on evidence admissibility." Id.; see also Parker v. State, 296 Ga. 586, 592-593 (3) (a) n. 10 (769 SE2d 329) (2015) ("Thus, not every discrepancy between the wording of the new Evidence Code and the version of the Federal Rules of Evidence that was in effect on January 1, 2013, signifies a different meaning.").

rules. Id. Thus, under the new Evidence Code, when the provision is materially identical to a federal rule, it also reflects the federal rule's meaning, displacing any other.

In this case, Rule 803 (4) materially mirrors Federal Rule 803 (4). Having found a Federal Rule of Evidence using materially identical language that addresses the evidentiary issue covered by Rule 803 (4), the question of whether to apply state or federal precedent ends: we look to federal appellate precedent until a Georgia appellate court decides the issue under the new Code.[4] The fact that the words of the medical treatment and diagnosis hearsay exception remain substantively unchanged between the old and new Evidence Code is inconsequential; because the state rule mirrors Federal Rule 803 (4), it is now read as interpreted by the federal appellate courts as of the effective date of the new Code.

3. Having decided that we look to federal precedent in construing Rule 803 (4), the next question is what federal precedent controls. Again, the

_____

[4] Of course, once a Georgia appellate court has decided the issue, all lower courts of the state must follow that decision. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); Art. VI, Sec. V, Par. III ("The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents.").

preamble is clear: decisions of "the Supreme Court of the United States and the United States circuit courts of appeal[s]" as of the effective date of the new Code. Ga. L. 2011, p. 100 § 1. In the case of conflicts "among the decisions of the various circuit courts of appeal[s] in interpreting the federal rules of evidence," the precedent of the Eleventh Circuit prevails. Id. See Chrysler, 303 Ga. at 361 (II); Glenn, 302 Ga. at 280 (II); Davis, 299 Ga. at 185 (2) (a) (2); Olds, 299 Ga. at 69 (2); State v. Frost, 297 Ga. 296, 299 (773 SE2d 700) (2015).

Neither the United States Supreme Court nor the Eleventh Circuit has specifically addressed whether statements of identification are admissible testimony in child sexual abuse cases under Federal Rule 803 (4). The Court of Appeals correctly noted that, in applying that rule in other contexts, the Eleventh Circuit generally has distinguished between statements of causation, which are admissible, and statements of fault, which are not. Almanza, 344 Ga. App. at 45-46 (citing United States v. Williams, 578 Fed. Appx. 872, 876-877 (11th Cir. 2014);[5] United States v. Belfast, 611 F3d 783, 818-819 (11th Cir. 2010); United

---

[5] The General Assembly enacted the new Evidence Code to adopt the Federal Rules of Evidence "as interpreted by" the federal appellate courts as of the effective date of the new Code. While still persuasive authority, any subsequent federal appellate case law lacks the same precedential weight as cases before that date. See supra pp. 555-557; Ga. L. 2011, p. 100 § 1.

12

States v. Darden, 186 Fed. Appx. 887, 889-890 (11th Cir. 2006)). Those cases are not controlling here; they neither held that identification statements were always inadmissible nor dealt with child sexual abuse. Instead, in these cases the Eleventh Circuit either affirmed the admission of statements of causation or found the admission of fault harmless without a holding regarding error. Further, those cases rely on the Advisory Committee Note to Federal Rule 803 (4) to make the distinction between causation and fault, but by the terms of that note the distinction does not resolve the question of the admissibility of identification of perpetrators of child sexual abuse.

The Advisory Committee Note on Federal Rule 803 (4) explains that the justification for the medical diagnosis and treatment hearsay exception is the underlying "guarantee of trustworthiness" of statements "made for purposes of diagnosis or treatment." Fed. R. Evid. 803 (4), Advisory Committee Note.[6] This

---

[6] The Court of Appeals correctly observed that although Advisory Committee Notes are not binding precedent and cannot change the plain meaning of the law or rules, they are highly persuasive (unlike ordinary legislative history). See Almanza, 344 Ga. App. at 40-41 n. 4 (quoting Tome v. United States, 513 U. S. 150, 167 (115 SCt 696, 130 LE2d 574) (1995) (Scalia, J., concurring in part and concurring in the judgment) (explaining that Advisory Committee Notes are "assuredly persuasive scholarly commentaries — ordinarily *the* most persuasive — concerning the meaning of the (r)ules" (emphasis in original)); Horenkamp v. Van Winkle and Co., 402 F3d 1129, 1132 (11th Cir. 2005) (explaining that Advisory Committee Notes "are nearly universally accorded great weight in interpreting federal rules" (citation and punctuation omitted)).

guarantee "also extends to statements as to causation, reasonably pertinent to the same purposes[.]" Id. In contrast, the note explains that "[s]tatements as to fault would *not ordinarily* qualify under this latter language[,]" not being reasonably pertinent to medical diagnosis or treatment. Id. (emphasis added). Ordinarily, identity is relevant only to establish fault and is entirely unrelated to medical diagnosis or treatment. Id. ("Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light."). Federal circuits, however, have noted that child sexual abuse cases do not necessarily fall within this general rule. See, e.g., Renville, 779 F2d at 436 ("[A] statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of [R]ule 803 (4) that it should not fall under the general rule."); compare Darden, 186 Fed. Appx. at 889-890 (distinguishing between statement that defendant was "beaten" and statement that he was beaten "by the cops"). In the case of child sexual abuse, the federal courts have determined that the identification of the alleged abuser may be "reasonably pertinent" to the medical diagnosis and treatment of the child. "[C]hild abuse involves more than physical injuries; the physician must be attentive to treating

14

the emotional and psychological injury which accompany this crime. The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser." <u>Renville</u>, 779 F2d at 436-437 (citations and footnote omitted). Further, the identity of the abuser may be critical to prevent reoccurrence of the injuries, both physical and emotional, for which the child is being presently treated. Id. Unlike in a car accident, identity of the alleged abuser may be an essential part of preventative medicine.

The Eleventh Circuit has not directly addressed the admissibility of identification testimony in child sexual abuse cases under Federal Rule 803 (4), and its precedent distinguishing between causation and fault in other contexts is of little help in deciding the specific evidentiary issue presented here. Accordingly, we must look to federal appellate court precedent beyond the Eleventh Circuit to evaluate the scope of Federal Rule 803 (4).[7]

No circuit has held that testimony regarding the identification of an alleged child abuser is categorically inadmissible under Federal Rule 803 (4). Some appellate courts have allowed identification testimony in child sexual

---

[7] If no such precedent existed, we would then look to any legal authority to the extent we found it persuasive, regardless of court or date.

15

abuse cases under Federal Rule 803 (4). See Morgan v. Foretich, 846 F2d 941, 948-950 (4th Cir. 1988); United States v. Kappell, 418 F3d 550, 556-557 (6th Cir. 2005); Renville, 779 F2d at 435-439; United States v. Yazzie, 59 F3d 807, 812-813 (9th Cir. 1995); cf. Danaipour v. McLarey, 386 F3d 289, 297-298 (1st Cir. 2004) (admitting evidence in a civil case); United States v. Joe, 8 F3d 1488, 1494 (10th Cir. 1993) (in a domestic sexual assault case, the court noted that identity of the abuser in child sexual abuse cases is "reasonably pertinent" to medical treatment and diagnosis) (citing Renville); but see United States v. Cherry, 938 F2d 748, 756-757 n.14 (7th Cir. 1991) (expressing concerns regarding admissibility of identification testimony had it been challenged expressly).

Some circuits have elected to provide no more guidance than the statutory language itself. See, e.g., Joe, 8 F3d at 1494, 1494 n.5. However, the Fourth and Eighth Circuits have applied the test as articulated by the Eighth Circuit in Renville. See Renville, 779 F2d at 435-439; Morgan, 846 F2d at 949.[8]

---

[8] District courts within the Eleventh Circuit also have applied the Renville test. See Key v. Tirey, 2006 WL 8436612, *8-*9 (N.D. Ala. June 20, 2006); In re Moore, 165 B.R. 495, 498-500 (M.D. Ala. 1993).

The <u>Renville</u> test[9] is a straightforward but rigorous two-step test for the admissibility of hearsay statements under Federal Rule 803 (4) generally. <u>Renville</u>, 779 F2d at 436. First, "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment[.]" Id. Second, "the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." Id. These two prongs ensure that the hearsay statement has a sufficient guarantee of trustworthiness while excluding statements beyond the scope of the rule.

This is consistent with the text of the rule. The first part of Rule 803 (4) permits statements "made for purposes of medical diagnosis or treatment and describing . . . the inception or general character of the cause or external source thereof[.]" OCGA § 24-8-803 (4). This language underscores that statements made to a provider for the purpose of diagnosis or treatment may be admissible because the self-interested motivation of the declarant in wanting effective

---

[9] The test was originally set out in <u>United States v. Iron Shell</u>, 633 F2d 77, 84 (8th Cir. 1980) ("A two-part test flows naturally from this dual rationale: first, is the declarant's motive consistent with the purpose of the rule; and second, is it reasonable for the physician to rely on the information in diagnosis or treatment."). The Court in <u>Renville</u> merely updated the test and applied it to the specific context of identity in child sexual abuse cases.

diagnosis or treatment (for themselves or others about whose health they care)[10] makes it more likely that the statements made for that purpose are true. See White v. Illinois, 502 U. S. 346, 356 (112 SCt 736, 116 LE2d 848) (1992) ("[A] statement made in the course of procuring medical services, *where the declarant knows that a false statement may cause misdiagnosis or mistreatment*, carries special guarantees of credibility[.]" (emphasis added)). This emphasis on motive is captured in the first prong of the Renville test. See Renville, 779 F2d at 436. The second part of Rule 803 (4) requires these statements to be "reasonably pertinent to diagnosis or treatment." OCGA § 24-8-803 (4). This language limits the scope of what is admissible under the rule. Only those statements actually reasonably pertinent to the provider's diagnosis and treatment of the patient are admissible, not just anything uttered during a medical exam (even if said with a subjective belief that the statements would be used for diagnosis or treatment). This cabins an exception that could otherwise become a pathway for introducing all sorts of problematic hearsay. This limit is likewise captured by the second

---

[10] Nothing in the text of Rule 803 (4) or Federal Rule 803 (4) prohibits a parent or family member from conveying the information for diagnosis or treatment of the victim. Thus, the fact that the mother spoke to the doctors in this case is not itself disqualifying. See, e.g., Danaipour, 386 F3d at 297-298. Of course the rules governing the admission of evidence and hearsay generally still apply. See infra n. 13.

prong of the Renville test. See Renville, 779 F2d at 436.

Given this basis for finding these statements reliable, assessing the validity of the declarant's "motive" is critical under the Renville test. In seeking medical treatment and diagnosis for sexual abuse, the medical need for truthfulness about the identity of the alleged abuser may not be known to the patient. See United States v. Gabe, 237 F3d 954, 958 (8th Cir. 2001) ("[N]ot even an adult necessarily understands the connection between a sex abuser's identity and her medical treatment."). Thus, to ensure the necessary guarantee of trustworthiness generated by the self-interest of the declarant seeking medical diagnosis and treatment, "the proponent must establish that the declarant's frame of mind when making the hearsay declaration was that of a patient seeking medical treatment." Id. (citation and punctuation omitted). Where the child is the declarant, it "must be shown that the child [understood] the medical significance of being truthful, i.e., the role of the medical health professional in trying to help or heal her, which triggers the motivation for being truthful." United States v. Sumner, 204 F3d 1182, 1185 (8th Cir. 2000). One obvious way to do this is for the physician to make clear to the victim that the identity of the abuser is important to diagnosis or treatment and the victim manifests such an

understanding. See Renville, 779 F2d at 438. But it may also be the case that a child's age may make it "exceedingly difficult to establish" that the child understood the importance of telling the truth to receive proper treatment for their injuries; in such cases, the testimony may lack the necessary guarantee of trustworthiness for admissibility under the rule. United States v. Turning Bear, 357 F3d 730, 739 (8th Cir. 2004).

As such, the Renville test acts as an effective gatekeeper for the admissibility of statements under the medical diagnosis and treatment hearsay exception in Federal Rule 803 (4).[11] It is a rigorous standard for the admission of identity statements in child sexual abuse cases that simultaneously takes account of their important role in the medical treatment of child sexual abuse victims and the need of trial courts to ensure the reliability of admitted testimony. It is also a test that is consistent with the text of the rule. That test is

---

[11] Some courts have observed that not all judicial applications of the Renville test have focused on the key question of the declarant's motive or state of mind. See Cassidy v. State, 536 A2d 666, 684-690 (Md. Ct. Spec. App. 1988); Colvard v. Commonwealth, 309 SW3d 239, 245-246 (Ky. 2010); see also Almanza, 344 Ga. App. at 51-52. We agree that a failure to focus on the essential element of motive, enshrined in the first part of the Renville test, is a mistake. The second prong of the Renville test limits the scope of relevant statements under the rule, but it does not and should not shift the focus away from the essential question of motive. For evidence to be admissible under Rule 803 (4), it must meet both prongs of the Renville test.

the standard Georgia courts must apply.

4.  Having determined that identification testimony in child sexual abuse cases may be admissible, providing that it complies with the test set forth in Renville, Almanza's statutory claims are unavailing.

The Court of Appeals found that the continued existence of the Child Hearsay Statute (OCGA § 24-8-820 ("Rule 820")) in the new Evidence Code affects the meaning of Rule 803 (4). See Almanza, 344 Ga. App. at 48-49. That is incorrect. The fact that both provisions may allow the admissibility of an abuser's identity in child sexual abuse cases in a specific context — like medical treatment and diagnosis — does not require one to be read to limit the other. See, e.g., United States v. Gari, 572 F3d 1352, 1361 n. 7 (11th Cir. 2009) ("Hearsay is admissible if it falls within *one* of the hearsay exceptions enumerated in Federal Rules of Evidence 803, 804, and 807." (emphasis added)); United States v. Bercier, 506 F3d 625, 632 (8th Cir. 2007) (finding abuse of discretion in the admission of evidence only after determining that the evidence "did not fall within another hearsay exception"). In short, both Rule 803 (4) and Rule 820 stand on their own terms, providing separate avenues for

admissibility of identity testimony.[12]

As such, the Court of Appeals's holding that identification testimony in child sexual abuse cases was categorically barred under Rule 803 (4) was error. The trial court must consider admissibility of such evidence under Rule 803 (4) in the light of the <u>Renville</u> test.[13] Accordingly, we reverse the Court of Appeals's decision and remand with instructions to vacate the trial court's order and remand for further proceedings consistent with this opinion.[14]

---

[12] Separate from Rule 803 (4), Rule 820 allows anyone to testify as to a statement of a child declarant under the age of 16 describing "any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child" if the proponent provides the adverse party prior notice, unless waived, and the child testifies at the trial. OCGA § 24-8-820. Of course, Rule 820 will be of little use in this case if neither the child nor the mother is available to testify.

[13] Not before us in this case is the double-hearsay issue raised by the apparent fact that the mother's statements to the doctor were themselves hearsay recounting the daughter's previous statements to the mother. If the trial court on remand determines that one or both of the doctors' statements at issue here meet the criteria for admission under Rule 803 (4) as we explain it, that alone will not be sufficient to render admissible the portions of those statements that recount the mother's hearsay statements. The trial court will then need to consider whether the mother's statements themselves fit within a hearsay exception.

[14] Another issue the trial court may need to consider on remand is whether the declarant's visit to the doctor at the direction of law enforcement was for the purpose of or reasonably pertinent to medical diagnosis or treatment under Rule 803 (4). See, e.g., <u>Bercier</u>, 506 F3d at 632; <u>Gabe</u>, 237 F3d at 957-958; <u>United States v. Beaulieu</u>, 194 F3d 918, 921 (8th Cir. 1999); <u>United States v. Balfany</u>, 965 F2d 575, 578, 580 (8th Cir. 1992). And although Rule 803 (4) typically involves non-testimonial evidence and, thus, does not implicate Confrontation Clause concerns, see <u>Michigan v. Bryant</u>, 562 U. S. 344, 362 n. 9 (131 SCt 1143, 179 LE2d 93) (2011) (noting that hearsay exceptions, including Rule 803 (4) "rest on the belief that certain statements are, by their nature, made for a purpose other than use in a

Judgment reversed and case remanded with direction. All the Justices concur, except Bethel, J., disqualified.

---

prosecution"), there may be specific instances when the government's involvement in procuring the statement raises serious Confrontation Clause concerns. See <u>Ohio v. Clark</u>, __ SE2d __ (135 SCt 2173, 2180, 192 LE2d 306) (2015) (providing that in determining whether an out-of-court statement is testimonial for Confrontation Clause purposes, "the question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony" (citation and punctuation omitted)); <u>United States v. Barker</u>, 820 F3d 167, 171-172 (5th Cir. 2016) (discussing the Confrontation Clause and identification testimony in the context of child sexual abuse).

Decided October 9, 2018.

Certiorari to the Court of Appeals of Georgia — 344 Ga. App. 38.

<u>D. Victor Reynolds, District Attorney, Michael S. Carlson, Charles P. Boring, Amelia G. Pray, John R. Edwards, John S. Melvin, Lindsay B. Gardner, Assistant District Attorneys</u>, for appellant.

<u>The Merchant Law Firm, John B. Merchant III, Ashleigh B. Merchant</u>, for appellee.

<u>Andrew H. Agatston; Isenberg & Hewitt, Melvin L. Hewitt, Jr.; Donna C. Stribling, Solicitor-General, Anna W. Davis, William T. Kemp III, Assistant Solicitors-General</u>, amici curiae.