[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15345
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cr-00266-SDM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JON LESLIE WILLIAMS,
a.k.a. Jon Lee,
a.k.a. Todd Hurt,

Defendants – Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(August 22, 2014)

Before PRYOR, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Jon Leslie Williams appeals his 71-month sentence after pleading guilty to one count of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a).  Mr. Williams contends that district court erred by admitting unreliable hearsay evidence to impose a six-level enhancement to his offense level for committing a sexual offense while in failure to register status.

Upon review of the record, and consideration of the parties' briefs, we affirm.

## I

Mr. Williams pled guilty (without a plea agreement) to knowingly and unlawfully failing to register as a sex offender and update his registration as required by the Sex Offender Registration and Notification Act.  *See* 18 U.S.C. § 2250(a).  The district court sentenced him to 71 months' imprisonment.

The presentence investigation report recommended that the district court establish Mr. Williams' total offense level at 19, with a criminal history category of V and a corresponding advisory guideline range of 57 to 71 months' imprisonment.  The report recommended a six-level enhancement because Mr. Williams had committed a sex offense against someone other than a minor while in failure to register status.  *See* U.S.S.G. § 2A3.5(b)(1)(A).  Mr. Williams objected to the proposed enhancement and the description of the underlying

2

offense in the report. At sentencing, the government presented evidence to support the challenged enhancement.

Kathy Daniels, an administrative nurse at Windmoor Healthcare, a psychiatric hospital, testified that on April 4, 2013, an anxious, shaken, and tearful patient, C.M.,[1] told her she had been raped. Ms. Daniels notified the department director and the police of C.M.'s statement. C.M. was admitted for inpatient treatment, and she continued to receive treatment through May of 2013 for the trauma associated with her rape.

The district court overruled Mr. Williams' hearsay objection to Ms. Daniels' testimony as to statements made by C.M. because they were being admitted for non-hearsay purposes, such as her appearance and the time and place of the report. The district court also admitted C.M.'s initial treatment plan as Government's Exhibit No. 5B, ruling that it was created as "part of the regular process of admission" at Windmoor Healthcare for the "establishment of a medical or treatment plan," it was "retained for the purpose of being resorted to in the treatment of patients," and it "reliably contain[ed] the report of a treating physician." D.E. 48 at 23-24. It similarly admitted C.M.'s outpatient medical records as Government's Exhibit No. 5C.

---

[1] Although the parties identified the victim by her full name at the sentencing hearing, we will refer to her by her initials to protect her privacy.

Detective Colin Brooks, who investigated C.M.'s alleged rape, testified that he interviewed C.M. on April 4, 2013, at Windmoor Hospital. Mr. Williams again objected to any testimony containing hearsay statements made by C.M., but the district court overruled the objection. According to Detective Brooks, C.M. stated that she lived with her boyfriend, Justin Odey, Bette Bodenhorn (Mr. Odey's mother), and Mr. Williams (Ms. Bodenhorn's boyfriend at the time). On the night of April 3, 2013, or the early morning hours of April 4, 2013, C.M. woke up disoriented to someone removing her clothing and performing oral sex on her. She began to scream, but the assailant covered her mouth and forcibly raped her.

Detective Brooks explained that C.M. is legally blind, cannot see in the dark, and uses a hearing aid. Although C.M. was not able to see her rapist, she believed it was Mr. Williams because her assailant had a beard during the attack, Mr. Williams also had a beard at the time, and her boyfriend was in the hospital. Moreover, earlier that night Mr. Williams had asked C.M. to clean up, and while she was in the kitchen, Mr. Williams—the only male in the house—rubbed his penis against her leg. C.M. admitted to consuming alcohol, taking sleeping pills, and smoking marijuana throughout the night of the rape.

After the interview, Detective Brooks ordered a rape examination. DNA swabs were taken from C.M.'s genital areas and underpants. The DNA in the semen from the swabs matched Mr. Williams' DNA.

4

When other police officers arrived at Mr. Williams' residence on April 4, 2013, he provided them with a false name.  The officers therefore arrested him.  In his post-arrest interview, Mr. Williams admitted to being at Mrs. Bodenhorn's house on April 3, 2014, but denied that he had sex with C.M.

A senior inspector with the United States Marshal's Service, Gary Scevola, testified that he listened to phone conversations between Mr. Williams and Ms. Bodenhorn after he was arrested. In those calls, Mr. Williams denied having sex with C.M.

After all the evidence had been admitted, the district court invited arguments as to whether the government had proven by a preponderance of the evidence that Mr. Williams had committed a sex offense against C.M. warranting the six-level enhancement.  The government argued that the evidence showed that Mr. Williams performed oral and vaginal sex on C.M. without her consent.  Mr. Williams argued that the government failed to show that the hearsay evidence was sufficiently reliable to prove that he had committed a sexual battery or rape by a preponderance of the evidence.

After hearing all the arguments, the district court overruled Mr.Williams' objections based, in part, on the DNA evidence.  The district court found that the circumstances demonstrated that the event that occurred between the night of April 3 and the early morning of April 4 was, more likely than not, a sexual battery.  The

5

court further found that the weight of the evidence pointed to the fact that encounter was nonconsensual.  The incident occurred over the night and was promptly reported the following morning.  There was, moreover, no evidence that C.M. recanted her report.  With respect to the testimony regarding C.M.'s out-of-court statements, the district court ruled that it "considered none of them in their hearsay capacity," but only as "evidence that reports were made at the time and place stated."  D.E. 48 at 181-82.

The district court adopted the factual statements and guideline calculations in the presentence investigation report.  It sentenced Mr. Williams to 71 months' imprisonment after considering the applicable advisory guideline range and the factors in 18 U.S.C. § 3553(a).  Mr. Williams objected to the six-level enhancement for committing a sexual offense while unregistered.

## II

Mr. Williams objects on due process grounds to the use of hearsay evidence in applying a six-level enhancement for being an unregistered sex offender who committed a sex offense against someone other than a minor pursuant to U.S.S.G. § 2A3.5(b)(1)(A).  We review constitutional challenges to a defendant's sentence *de novo*.  *See United States v. Ghertler*, 605 F.3d 1256, 1268 (11th Cir. 2010).

Hearsay is a declarant's out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).

6

Although hearsay is generally inadmissible under Rule 802 of the Federal Rules of Evidence, hearsay evidence that has sufficient indicia of reliability may be considered by a sentencing court regardless of its admissibility at trial "'in determining whether factors exist that would enhance a defendant's sentence.'" *Ghertler*, 605 F.3d at 1269 (quoting *United States v. Baker*, 432 F.3d 1189, 1253 (11th Cir. 2005)).  So long as the defendant is given the opportunity to refute the evidence and the evidence bears a minimal indicia of reliability, there is no violation of the defendant's due process rights.  *See United States v. Reme*, 738 F.2d 1156, 1167 (11th Cir. 1984).  In order to show that a district court has relied on false or unreliable information during sentencing, the defendant must show (1) that the challenged evidence is materially false or unreliable, and (2) that it actually served the basis for the sentence.  *Id*.

### III

Under the doctrine of invited error, "if a party . . . agrees to the admissibility of certain evidence, he cannot later complain that any resulting error is reversible." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) ("In the Eleventh Circuit, '[t]he doctrine of invited error is implicated when a party induces or invites the district court into making an error.'") (quoting *United States v. Stone*, 139 F.3d 822, 838 (11th Cir.1998)).  Although Mr. Williams objected to Detective Brooks' testimony concerning C.M.'s out-of-court statements, his counsel agreed

7

that the statements could be "offered to show that [they were] made at a time and place to an officer." *See* D.E. 48 at 58 ("THE COURT: . . . [Y]ou objected to the officer's saying what the putative victim said to him. . . . [I]f that statement is being offered to show that it was made at a time and place to an officer, it is not hearsay, because it is not being offered for its substance, but the fact of its having been made. MR. TANENBAUM: I agree, Your Honor."). We take the district court at its word when it said that it admitted Detective Brooks' testimony for this limited purpose only. *See also* D.E. 48 at 181-82 ("And so far as the various hearsay things, I considered none of them in their hearsay capacity, only that they made reports, that they were evidence that reports were made at the time and place stated . . . .").

On appeal, Mr. Williams contends that it was error for the district court to consider these reports for the fact that they were made because "C.M.'s reports of her encounter with Mr. Williams have significance only to the extent that her asserted claim of rape was considered for its truth." Appellant's Br. at 15. Mr. Williams, however, invited the district court to make this alleged error by agreeing that the statements were admissible to prove that C.M. reported the alleged rape to the police. He, therefore, cannot challenge the admissibility of this evidence on appeal. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) ("This court may affirm a decision of the district court on any ground

8

supported by the record."). "[E]ven plain error review is unavailable in cases where a criminal defendant 'invites' the constitutional error of which he complains." *United States v. Jernigan*, 341 F.3d 1273, 1289 (11th Cir. 2003).

We further conclude that the district court did not err by admitting C.M.'s hospital records from Windmoor Healthcare and the testimony of Nurse Daniels. Statements made for medical diagnosis or treatment "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(4) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness. . . . A statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."). The advisory committee notes explain that Rule 803(4) "extends to statements as to causation, reasonably pertinent to [purposes of diagnoses and treatment]. . . . Statements as to fault would not ordinarily qualify under this latter language. Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light." Fed. R. Evid. 803(4) advisory committee's note (citations omitted).

In *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010), we held that the district court did not abuse its discretion in admitting into evidence unredacted

medical records that contained statements by medical professionals indicating that the victim's wounds and burns resulted from abuse or torture (as opposed to, for example, a vehicular or workplace accident).  We explained that these statements were admissible because they did not assign any fault or suggest that the "abuse" or "torture" met the legal or statutory definition of these terms.  *Id*.  In support of our holding, we favorably cited an Eighth Circuit decision, which held that medical records containing a statement that the victim was "raped" were admissible under Rule 803(4) as a statement of causation, not fault.  *See id.* (discussing *United States v. Iron Thunder*, 714 F.2d 765, 772-73 (8th Cir. 1983)).

Mr. Williams does not contest that C.M.'s statements that she was raped, made to Nurse Daniels and documented in her medical reports, were made for the purpose of medical diagnosis and treatment.  As the district court found, Government's Exhibit No. 5B was created as "part of the regular process of admission" at Windmoor Healthcare for the "establishment of a medical treatment plan, and reliably contains the report of the treating physician and the purpose for treating the patient.  D.E. 48 at 23-24.  Accordingly, these statements were admissible under Rule 803(4).[2]

---

[2] We reject Mr. Williams' arguments that the evidence in question was not reliable.

## IV

For the foregoing reasons, we affirm the imposition of the six-level enhancement.[3]

**AFFIRMED.**

---

[3] Because Mr. Williams does not challenge the sufficiency of the evidence, we do not address it. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").