**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2020**

# In the Court of Appeals of Georgia

A20A0185. MCEADY v. THE STATE.                    DO-007 C

DOYLE, Presiding Judge.

Following a jury trial, Armaster McEady was convicted of burglary,[1] rape,[2] and aggravated battery.[3] He appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the guilty verdict; (2) the trial court erred by admitting hearsay statements from the victim under OCGA § 24-8-807 (the residual hearsay exception); and (3) the trial court erred by admitting certain other hearsay statements by the victim under OCGA § 24-8-803 (4) (the medical treatment hearsay exception). For the reasons that follow, we conclude that the

---

[1] OCGA § 16-7-1 (b).

[2] OCGA § 16-6-1 (a) (1).

[3] OCGA § 16-5-24 (a).

evidence was sufficient, but there were potential errors in admitting the hearsay evidence. Nevertheless, based on the record before us, including the strong forensic evidence identifying McEady and the cumulative nature of the challenged hearsay, we affirm.

Construed in favor of the verdict,[4] the evidence shows that 74-year-old E. A. lived with her adult daughter, Sheila Matchett, in Valdosta, Georgia. E. A. was physically and mentally infirm and required help conducting basic daily tasks. In April 2015, Matchett arrived home one evening and found that her mother had been beaten and raped. Police responded to the scene, and E. A. was transported by ambulance to the emergency room where she was examined by hospital medical staff. E. A. suffered injuries to her eyes, jaw, and face, and she had two broken ribs. Based on E. A.'s presentation and complaints, hospital staff called in an outside sexual assault nurse examiner ("SANE") to perform a sexual assault exam and interview. The SANE collected biological samples from E. A.'s clothing and body, and E. A. told the SANE that she had been raped, but she did not identify her attacker at that time. At trial, Matchett gave hearsay testimony that on the day after the attack, E. A. said that she recognized her attacker's voice as McEady's. McEady had dated

---

[4] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

Matchett off and on for several years, and E. A. was familiar with him. Matchett had just ended their relationship the previous month.

Police approached McEady, who agreed to speak to them after being *Mirandized*.[5] McEady denied being at the residence and gave an alibi, which later did not check out. McEady admitted that he knew E. A. from his time dating Matchett. McEady also agreed to give a DNA sample from a cheek swab.

The Georgia Bureau of Investigation performed a DNA analysis on the biological and clothing samples taken from the SANE's exam. The analysis revealed the presence of seminal fluid on E. A.'s underwear and the presence of DNA from E. A. and from McEady on her underwear. No other individual's DNA was detected.

Based on this evidence, McEady was charged with burglary, rape, and aggravated battery. Following a trial, a jury found him guilty on each count, and his motion for new trial was denied. He now appeals.

1. McEady first argues that the evidence was insufficient to support the guilty verdict. We disagree.

When an appellate court reviews the sufficiency of the evidence,

---

[5] 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[6]

Here, the evidence is undisputed as to the fact that E. A. was attacked and raped. Her injuries were obvious and clearly caused by an assailant. E. A. was bedridden due to her age and other infirmities, and she was at home alone. The main issue at trial was the identity of her attacker. McEady argues that E. A. told police and the SANE nurse that she could not identify her attacker, and only identified McEady the next day, when she told Matchett. McEady also relies on the lack of physical evidence gathered from the residence that tied him to the scene.

Nevertheless, the record also shows that E. A. was frightened when she gave the conflicting statements, and the jury was authorized to infer that she only felt

---

[6] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

4

comfortable discussing the attack with her daughter. Most importantly, the record shows that seminal fluid and McEady's DNA were found in E. A.'s underwear; no other foreign DNA was found in the samples. Further, McEady's alibi did not check out when police attempted to verify it, and it is undisputed that McEady had knowledge of how to enter the house through a broken door without a key. "Resolving evidentiary conflicts and inconsistences and assessing witness credibility are the province of the fact finder, not the appellate court."[7] Accordingly, the evidence amply authorized the jury to find that McEady committed the crimes alleged.[8]

2. McEady also contends that the trial court erred by admitting certain hearsay testimony from Matchett that E. A. told her one day after the attack that McEady was the perpetrator. We conclude that the trial court did not follow the proper test in admitting the evidence, but in light of the strong and uncontroverted DNA evidence identifying McEady, this error does not warrant a retrial.

---

[7] (Citation and punctuation omitted.) *McNeely v. State*, 296 Ga. 422, 425 (1) (768 SE2d 751) (2015).

[8] See *Lewis v. State*, 306 Ga. 455, 458-459 (1) (a) (831 SE2d 771) (2019) (holding that the evidence, including a positive DNA match, was sufficient despite the defendant's hypothetical argument that he did not rape the victim); *Martinez v. State*, 302 Ga. 86, 88 (1) (a) (805 SE2d 44) (2017) (same).

At trial, Matchett testified about a visit with E. A. the day after the rape. On direct, the State asked Matchett, "Who brought up the topic of the rape?" and after Matchett replied that E. A. had, McEady's counsel objected. The jury was excused, and counsel was allowed to make a record of his objection, which renewed a pre-trial objection to this testimony. The court previously had overruled McEady's challenge following a pre-trial hearing, which ruling was memorialized in a written order by another judge, and the trial judge again overruled the objection at trial. After the jury was brought back in, Matchett testified that E. A. told her that she recognized McEady's voice and identified him as the attacker.

Both the pretrial ruling and contemporaneous ruling purported to admit the evidence under a "necessity exception" but cited the current "residual exception" to hearsay under OCGA § 24-8-807.

OCGA § 24-8-807 provides, in relevant part:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that:

(1) The statement is offered as evidence of a material fact;

(2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

This Code section "is borrowed from the Federal Rules of Evidence and is not a rule that was carried over from Georgia's former Evidence Code."[9] Thus, unlike the necessity exception, which no longer applies,[10] the residual exception contains new requirements not already in our case law before Georgia adopted the new Evidence Code in 2013.[11]

---

[9] *State v. Holmes*, 304 Ga. 524, 529 (2) (a) (820 SE2d 26) (2018).

[10] See id. at 528 n. 4 ("Because this case was tried after the 2013 effective date of Georgia's new Evidence Code, the former 'necessity' exception to the rule against hearsay, described in former OCGA § 24-3-1, was not applicable in this case.").

[11] See id. at 530 (2) (a) (holding that the trial court erred because "it relied primarily upon cases decided under Georgia's former Evidence Code, which are no longer applicable"). See also *Davis v. State*, 353 Ga. App. 651, 655 (2) (839 SE2d 184) (2020) ("This rule was designed to be used very rarely[] and only in exceptional circumstances. The rule applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present. . . The unavailability of the declarant is not a prerequisite to admissibility under [OCGA § 24-8-807].") (punctuation omitted).

These factors include a consideration of the trustworthiness of the original declarant, given the circumstances in which they were first made, and whether guarantees of trustworthiness exist that are equivalent in significance to the specific hearsay exceptions enumerated in Federal Rules of Evidence 803 and 804. Therefore, such guarantees must be equivalent to cross-examined former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history.[12]

Here, the trial court did not engage in this analysis, nor do the parties cite to current case law elucidating its application. Nevertheless, pretermitting whether the hearsay could be admissible under a proper Rule 807 analysis, "even where an abuse of discretion is shown, there are no grounds for reversal if the error did not affect a 'substantial right,' and thus harm, the defendant."[13] To make this determination, "we review the record de novo and weigh the evidence as we would expect reasonable

---

[12] (Punctuation omitted.) *Holmes*, 304 Ga. at 529 (2) (a).

[13] *Venturino v. State*, 306 Ga. 391, 393 (2) (830 SE2d 110) (2019), citing OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

jurors to have done . . . , and we assess whether it is highly probable that the error did not contribute to the verdict."[14]

As noted above, the hearsay testimony McEady challenges was E. A.'s identification of McEady as her attacker. In light of the uncontroverted and unexplained evidence that seminal fluid and McEady's DNA were found in E. A.'s underwear immediately after the rape, it is highly probable that an erroneous admission of E. A.'s hearsay identification did not contribute to the verdict.

Moreover, E. A.'s identification was cumulative of the unrebutted DNA evidence identifying McEady. In other similar cases, Georgia courts have held that the improper admission of hearsay testimony was harmless when it was cumulative of other properly admitted evidence.[15] In light of the record before us, we conclude

---

[14] (Punctuation omitted.) Id., citing *Smith v. State*, 299 Ga. 424, 432 (788 SE2d 433) (2016).

[15] See, e.g., *Sanchious v. State*, 351 Ga. App. 611, 616 (1) (b) (831 SE2d 843) (2019) (holding that the admission of a forensic report was harmless in light of properly admitted testimony regarding the contents of the report); *Williams v. State*, 304 Ga. App. 592, 595 (3) (696 SE2d 512) (2010) (holding that admission of hearsay evidence — that the victim was pregnant with the defendant's child — was harmless because there was properly admitted DNA evidence showing the same). See also OCGA § 24-8-802 ("Hearsay shall not be admissible except as provided by this article; provided, however, that if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.").

that the DNA evidence of McEady's identity rendered harmless any error in the admission of E. A.'s hearsay identification.

3. Last, McEady challenges the admission of the statements E. A. made to the SANE during the sexual assault examination. He characterizes these statements as an "alleged identification of" McEady, but the SANE testified that E. A. did not identify anyone in particular.[16] Rather, according to the SANE, E. A. only "told me that it was an unknown black male." The SANE proceeded to testify, without objection, as to some of E. A.'s descriptions of the attack, such as that there was physical violence and restraint, threats to kill her, and vaginal and anal contact by the attacker's penis, and that she had not had sex in years. Nevertheless, McEady did object at trial to other descriptions of the attack as recounted by the SANE, including E. A.'s statements that "he pushed me down on the bedroom floor[,] and he said that he wanted some p----y. I told him no. . . . He got on top of me and said if I tell he would come back and kill me. He pulled my pants down and had sex with me in my vagina and my butt. . . ." Over McEady's objection, the trial court admitted the testimony as

---

[16] To the extent that McEady was identified, our analysis in Division 2 demonstrates that any error was harmless.

10

statements made for purposes of medical diagnosis or treatment. McEady now argues the admission of this testimony was error.

Under OCGA § 24-8-803 (4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are excepted from exclusion as hearsay. When applying this rule, "we look to federal appellate precedent [as of the effective date of the new Evidence Code] until a Georgia appellate court decides the issue under the new Code."[17]

In similar contexts, the Eleventh Circuit Court of Appeals has applied this hearsay exception and held that admitting a victim's statement to *treating medical staff* describing "rape" as the cause of injuries was not an abuse of discretion under Federal Rule 803,[18] which is nearly identical to OCGA § 24-8-803 (4).[19] This is

---

[17] *State v. Almanza*, 304 Ga. 553, 558 (2) (820 SE2d 1) (2018).

[18] See *United States v. Williams*, 578 Fed. Appx. 872, 876 (III) (11th Cir. 2014) (unpublished).

[19] See *Almanza*, 304 Ga. at 557-558 (2).

11

because such descriptions are admissible to the extent they relate to "causation reasonably pertinent to purposes of diagnoses and treatment."[20]

Here, E. A. initially was seen by hospital emergency room medical staff. The treating emergency room physician testified that E. A. gave him sufficient information for him to provide medical treatment, and he made the decision to admit E. A. to the hospital's trauma service. The SANE was called in to perform a forensic examination because regular nursing staff are not qualified to perform such examinations, and the SANE testified that by the time she arrived, the decision had been made to admit E. A. The SANE explained the purpose of her interview questions as follows: "By listening to her story I can kind of gauge where I could potentially find evidence, so that would kind of lead me in the direction depending on what she says and where I should look for evidence." The SANE's physical exam was geared toward a head-to-toe documentation of injuries, including the collection of DNA evidence for analysis seeking the identity of any foreign DNA found. Based on this record — including the fact that hospital staff had independently evaluated E. A., had gathered enough information to make treatment decisions, and had made the decision to admit E. A. for trauma treatment independent of the SANE interview — it is

_____

[20] (Punctuation omitted.) *Williams*, 578 Fed. Appx. at 876 (III).

12

questionable whether the hearsay elicited by the SANE interview in this case was reasonably pertinent to diagnosis and treatment, as opposed to gathering evidence.[21]

But the full record demonstrates that we need not resolve this question because the harm resulting from any error in admitting the challenged statements E. A. made to the SANE would not warrant reversal. First, as noted above, E. A. did not identify McEady during the SANE interview, and McEady's enumeration is predicated on an alleged hearsay identification of McEady. The SANE interview primarily described the rape itself, and it did not implicate McEady other than by saying the perpetrator was an unknown black male. Because McEady did not challenge the notion that a rape occurred — only his identification — the SANE interview did not materially undermine his defense.

Second, to the extent that the challenged descriptions of the rape were violent, the SANE already had testified that E. A. disclosed violent injuries, she had not had

---

[21] Cf. id. (holding that a victim's *initial* disclosure *made to a treating nurse* that the victim was "raped" was admissible); *United States v. Iron Thunder*, 714 F2d 765, 772-773 (II) (B) (8th Cir. 1983) ("Even though [the treating physician's] examination and questioning of [the victim] were pursuant to a standardized protocol designed in large measure to prepare for criminal prosecution, Rule 803 (4) applies to statements made for the purpose of medical diagnosis as well as to statements made for the purpose of medical treatment. [The victim] responded to questions by [the treating physician,] which were intended not only to shed light on her physical, emotional, and mental condition, but which also could serve as a basis for treatment.").

13

sex in years, her attacker had held her down and threatened her, she was anxious and fearful, and there was nonconsensual genital contact. McEady did not object to this testimony, most of which was hearsay, but "[i]f a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible."[22] Further, there was non-hearsay testimony describing E. A.'s physical injuries and her frightened demeanor, and the fact that the injuries were consistent with a violent attack. Thus, E. A.'s descriptions of the attack to the SANE were essentially cumulative of other legal evidence describing the attack.

Last, as noted in Divsion 2, the DNA evidence linking McEady to the rape was unexplained. McEady did not testify in his defense, but he offered a weak alibi defense that was wholly undermined by the fact that his alleged cohabitant could not remember if McEady lived with her at the time of the rape, nor McEady's whereabouts at the time of the rape, and by the fact that McEady gave a different alibi to police. Neither the alibi witness nor the supposed alibi McEady asserted to police corroborated McEady's claim of alibi.

---

[22] (Punctuation omitted.) *Mason v. State*, 353 Ga. App. 404, 408 (3) (837 SE2d 711) (2020), quoting OCGA § 24-8-802.

Based on this record, we conclude that any error in the admission of the challenged portion of E. A.'s hearsay account of the rape does not require reversal.[23] The evidence of McEady's identification was very strong and not materially aided by the SANE's testimony nor undermined by McEady's defense, and the hearsay evidence of the attack itself largely was cumulative of other unchallenged evidence that was admitted. Therefore, this enumeration does not require reversal.[24]

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[23] See, e.g., *Sawyer v. State*, __ Ga. __ (2) (b) (839 SE2d 582) (Case No. S19A1341, decided Feb. 28, 2020) (in the context of ineffective assistance for failure to object to character evidence, the challenged "statement was harmless because it was cumulative of a significant volume of evidence already presented to the jury without objection"); *Hambrick v. State*, 353 Ga. App. 666, 674 (2) (b) (839 SE2d 664) (2020); *Sanchious*, 351 Ga. App. at 616 (1) (b).

[24] See *Holden v. State*, 314 Ga. App. 36, 39 (2) (722 SE2d 873) (2012) (holding that the strength of the physical evidence rendered harmless erroneous admission of other evidence).